T.C. Summary Opinion 2009-144

UNITED STATES TAX COURT

JANELLO S. DUNGCA AND MARIA C. GUTIERREZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17802-08S.                Filed September 17, 2009.

Janello S. Dungca and Maria C. Gutierrez, pro sese.

<u>Matthew D. Carlson</u>, for respondent.

GERBER, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463[1] of the Internal Revenue Code in
effect when the petition was filed.  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 2005, the taxable year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

and this opinion shall not be treated as precedent for any other case.

Respondent determined a $33,091 income tax deficiency and a $6,618 section 6662(a) accuracy-related penalty for petitioners' 2005 tax year. After concessions,[2] the issues presented for our consideration are: (1) Whether petitioners are entitled to deduct expenses for meals and entertainment claimed on Schedule C, Profit or Loss From Business; (2) whether petitioners are entitled to deduct gambling losses; (3) whether petitioners are entitled to deduct moving expenses;[3] (4) whether petitioners are entitled to deduct educational expenses; and (5) whether petitioners are liable for a section 6662(a) accuracy-related penalty.

## Background

Petitioners resided in California at the time their petition was filed. Petitioners were married during the period under

---

[2]Petitioners conceded $643 in unreported income and that they are not entitled to deductions claimed for utilities and business use of their home. Respondent conceded that petitioners are entitled to gambling losses of $10,497.10. Petitioners claimed losses of $78,437.

[3]Petitioners provided no evidence in support of their claimed deduction for moving expenses and, accordingly, are considered to have abandoned this issue. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989). Respondent made numerous adjustments to petitioners' 2005 tax return, and only a limited number were presented to the Court. To the extent that any of those adjustments have not been conceded or settled, petitioners failed to adduce evidence in support of those deductions and have thus abandoned those items.

consideration and filed a joint Federal Income tax return for their 2005 tax year. During 2005 petitioner Janello S. Dungca (Mr. Dungca) was employed by a consulting company in Pittsburgh, Pennsylvania. His consulting assignment from January 1 through July 30, 2005, was at the Mayo Clinic in Rochester, Minnesota. During that same period, approximately every other weekend petitioners visited a gambling establishment named Canterbury Park that offered wagering on horse racing.

Mr. Dungca was an inveterate gambler, and since 1991 he had spent a good amount of his nonworking time gambling. His gambling activity focused upon horse racing, and he made multiple bets on each race in the form of trifecta and other multiple wagers where horses had to finish in a particular order. He gambled whenever he had access to funds. During 2005 Mr. Dungca gambled every other weekend because his salary was paid on a biweekly basis. At the betting establishment Mr. Dungca would place a wager on every available race. Occasionally, when he had winnings he would entrust them to his wife with instructions not to return them to him. Nevertheless, Mr. Dungca would approach his wife and convince her to give him the winnings. Mr. Dungca would retain betting slips, receipts, and records of cash withdrawals, and at the end of each day he would record the day's bets, winnings, and cash withdrawals (cash in and out) in a

journal. The journal entries reflected the net cashflow for the day, because there were large numbers of bets made each day.

On the days that he gambled, it was not unusual for Mr. Dungca to wager total daily amounts ranging from approximately $500 to over $3,000. His pattern was to withdraw cash from his bank account (usually through an ATM) and to place wagers. If he lost, he would withdraw more funds. If he won, he would "reinvest" the winnings. During 2005 Mr. Dungca received Forms W-2G, Certain Gambling Winnings, reflecting total gambling winnings of $78,262. For their 2005 tax year petitioners reported gambling winnings of $78,437 and corresponding gambling losses of $78,437, thereby showing no net gambling income for the year. Only gambling winnings that exceeded $600 were reported on Forms W-2G, and winnings in amounts less than $600 were not included in the $78,437 (either on Forms W-2G or reported on petitioners' 2005 income tax return).

Mr. Dungca retained betting ticket stubs and maintained records of his cash withdrawal and gambling activity. He used that information, which included all winning and losing bets, to determine that his losses exceeded his winnings during 2005. Unfortunately, his wife petitioner Maria C. Gutierrez (Ms. Gutierrez), discarded some of the stubs and records sometime after the 2005 return had been prepared and filed because she did not think that they were of any future use.

Mr. Dungca's journal contained only summary entries. On any day that he gambled he would record the date, location, types of wager, the net amount won, and the net amount lost. He would also record the cash withdrawals from the bank and the amount on hand at the end of each day. The winnings over $600 can be verified, but there is no way to verify winnings less than $600 or the bets or losses for each day without reference to the underlying tickets, which, to some extent, have been discarded.

Mr. Dungca's recordkeeping was based on cash on hand. He would account for cash withdrawals from the bank and any net winnings. He did not, however, segregate his gambling cash on hand from one day to the next. As an example, on December 30, 2005, he ended the day with $3,000 cash on hand and had only $2,500 cash on hand on December 31, 2005. The $500 difference was spent on purchases other than betting. In addition, Mr. Dungca's journal entries were occasionally inconsistent or inaccurate.

When petitioners' 2005 tax return was audited, Mr. Dungca presented his journal, in which he had recorded the net transactions for each day. He also presented 2005 bank records reflecting cash withdrawals that corresponded to and supported his log. He did not, however, have some of the betting stubs and/or receipts because of his wife's mistake, and he was forced to reconstruct his betting patterns for 2005. After some days of

gambling, Mr. Dungca had net winnings, but, inevitably, he would use those winnings to fund future gambling. For purposes of his audit Mr. Dungca constructed a spreadsheet that is backed by documentation that was available to respondent's agents, reflecting that he bet $92,727.95 during 2005. The contemporary log, however, reflected losses/bets totaling $98,323.80. The difference, as Mr. Dungca explained, is represented by tickets that were discarded by his wife.

Mr. Dungca also used detailed information from 2006 and 2007 to show his betting patterns, and he testified that they were substantially the same as his 2005 patterns. Essentially, his betting pattern for part of 2006 was to gamble for about 4 or 5 hours per day and make multiple bets on each race in the approximate range of $12 to $100. Most of the bets did not result in winnings. Occasionally, Mr. Dungca would win large amounts. For example, on October 28, 2006, he bet $68 and won $6,328.70. He also won smaller amounts ranging approximately from $16 to $700. For 2005, however, there are no backup records to show the winnings under $600.

For 2005 Mr. Dungca deducted $4,000 for meals purchased while he was away from home on business. Mr. Dungca had accepted a temporary assignment in Santa Clara, which was approximately 184 miles from his home. He was able to stay with relatives in Santa Clara and accordingly claimed only expenses for meals. Mr.

Dungca produced receipts for meals. The receipts were occasionally for more than one person, but there was no specific evidence of the identity of the other person(s) or the business purpose for the meal.

Ms. Gutierrez was married to Mr. Dungca during 2004. She moved to the United States from Colombia, South America, where she was licensed as a physician specializing in anesthesiology. In order to practice medicine in the United States she had to become certified. To become certified she had to appear before three boards and be tested as to her qualifications. Before the testing, she took courses to prepare herself. The cost of three preparatory courses during 2005 was $2,560. Petitioners claimed only $2,000 for education on their 2005 return.

### Discussion[4]

Petitioners' entitlement to claimed gambling losses represents a substantial portion of the $33,091 deficiency. Mr. Dungca was an inveterate gambler, and he wagered substantial amounts during 2005. He had retained his individual betting receipts and maintained a journal of the net cashflow for each day's betting activity. Although Mr. Dungca has bank records showing substantial withdrawals of cash that correspond to the

---

[4]Neither party raised the question of the burden of proof or the application of sec. 7491. Under established principles and in general, petitioners bear the burden with respect to the disallowed deduction items, and respondent has the burden of production with respect to the accuracy-related penalty.

entries in his journal, his wife mistakenly discarded some of his betting receipts so that he is not able to show that his gambling losses equaled or exceeded his gambling winnings.

Further complicating his situation, Mr. Dungca received and maintained only records of winnings that were $600 or more, and there is no way to verify the winnings that were less than $600 other than the daily summary entries in Mr. Dungca's journal. One final complication is that, to some extent, Mr. Dungca's journal does not account for all cash withdrawn or won because he did not account for variances in cash on hand from one day to the next.

Taxpayers are entitled to deduct[5] gambling losses only to the extent of gambling winnings. Sec. 165(d); sec. 1.165-10, Income Tax Regs. Taxpayers are required to maintain adequate records in support of the amounts reported on their tax returns. Sec. 6001. Mr. Dungca's journal reflects $98,323.80 in 2005 wagering, based on his summary cashflow analysis. One could assume that the difference between the total wagers and the $78,437 reflected on Forms W-2G represented winnings in amounts less than $600, however, there is no accurate way to support that

---

[5]We note that petitioners' gambling losses are itemized deductions subject to the limitations for deductions claimed on Schedule A, Itemized Deductions, because they are not in the trade or business of gambling. See Hochman v. Commissioner, T.C. Memo. 1986-24.

assumption.  One could also assume that Mr. Dungca always[6] "reinvested" his winnings and that his losses always equaled his winnings.  However, there is no accurate way to support that assumption.

Mr. Dungca has established his inveterate gambling pattern and has presented sufficient records to permit the Court to make a judgment as to the amount of his gambling losses for 2005. Under the principles expressed in Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), a court is permitted to make such a judgment. On the basis of all of the information available, we hold that Mr. Dungca's gambling losses for 2005 were $65,000, relying upon his reporting of $78,437 of income or winnings.[6]  In great part, our holding is based upon our estimate of Mr. Dungca's personal use of winnings for expenditures other than wagering and inconsistencies in his cashflow analysis.

Ms. Gutierrez was licensed as a physician specializing in anesthesiology in her native country of Colombia, South America. In order to practice medicine in the United States, she was required to become board certified and licensed.  To that end,

---

[6]We have not considered any amounts of winnings or losses in excess of the $78,437 reported and, in effect, assumed that winnings of less than $600 and wagers (losses) of those amounts were equal.  Our holding is based solely on the evidence before the Court.  Our holding that petitioner is entitled to $65,000 in gambling losses includes the $10,497.10 respondent conceded.

she took specialized courses. During 2005 her tuition was $2,560, only $2,000 of which was deducted on petitioners' 2005 tax return.

Under section 222, taxpayers are allowed a deduction for tuition and related expenses paid during the taxable year. For the year 2005 the deduction was limited in amount and depended upon the taxpayer's adjusted gross income. On the basis of petitioners' combined adjusted gross income, the limitation was $2,000, the amount they claimed. See sec. 222(b)(2)(B)(ii).

Respondent argues that petitioners did not substantiate the educational expenditure. On the record before us, we find that Ms. Gutierrez paid $2,560 for qualified tuition, $2,000 of which is deductible for 2005 under section 222.

For 2005 Mr. Dungca deducted $4,000 for meals purchased while he was away from home on business. He had accepted a temporary assignment in Santa Clara, approximately 184 miles from his home in California. He paid only meal expenses because he was able to stay with relatives in Santa Clara. Mr. Dungca produced receipts for meals. The receipts were occasionally for meals purchased for more than one person. In instances of multiple meals there was no evidence of the identity of the other person(s) or the business purpose for the meal.

In general, taxpayers are allowed a deduction for ordinary and necessary expenses paid or incurred during the taxable year

in carrying on any trade or business.  Sec. 162.  Traveling expenses, including amounts expended for meals while away from home in the pursuit of a trade or business, may be deductible. Commissioner v. Flowers, 326 U.S. 465 (1946).  In addition, when a taxpayer is away from home on a temporary basis, his living or travel expenses may be considered deductible business expenses. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  Employment has been defined as "temporary" if it is foreseeably terminable or lasts for a relatively short fixed duration.  Boone v. United States, 482 F.2d 417, 419 (5th Cir. 1973).  Mr. Dungca's work in Santa Clara was temporary.  Accordingly, the remaining question is one of substantiation of the $4,000 claimed for meals.  See sec. 274(d)(1) (requiring substantiation by adequate records of traveling expenses, including meals).

The Court reviewed the meal receipts Mr. Dungca provided for a period beginning July 6 and ending September 23, 2005.  For each receipt that indicated multiple diners, the number of diners was divided into the total to arrive at the amount deductible for Mr. Dungca.  In addition, a limited number of receipts were for restaurants that were close to Mr. Dungca's home in Fairfield and far from his temporary work location in Santa Clara.  Those receipts were not counted toward the deductible amount allowable. On the basis of that approach, the Court finds that petitioners substantiated $875.88 of meals expense for 2005.  Because of the

section 274(n) limitation, petitioners are limited to a deduction of $437.94.

Finally, we consider whether petitioners are liable for an accuracy-related penalty. Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty of 20 percent on the portion of an underpayment attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax. Negligence includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. An understatement is substantial if it exceeds the greater of: (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $5,000. Sec. 6662(d)(1)(A).

Respondent determined that petitioners were liable for the section 6662 accuracy-related penalty for negligence because of their failure to maintain adequate records and their failure to substantiate claimed deductions. It is patently clear from the record that petitioners failed to maintain adequate records, and to the extent that we have specifically disallowed such deductions, our basis was failure to substantiate the amounts. In addition, they did not establish reasonable cause and good faith for their underpayment. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Therefore, we hold that

petitioners are liable for an accuracy-related penalty on the resulting underpayment.

All other adjustments in the notice of deficiency were either computational or items for which petitioners did not provide the Court with any evidence or argument and which are therefore deemed abandoned or conceded.  In view of the foregoing,

Decision will be entered

under Rule 155.